UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO.: 18-86 |
| v. | * | SECTION: "F" |
| CARLOS ALBERTO ZELAYA ROJAS | * | |

\* \* \*

## FACTUAL BASIS

Had this matter proceeded to trial, the government would have proven beyond a reasonable doubt, through the introduction of relevant, competent, and admissible testimony and other evidence, the following facts to support the allegations against the defendant, **CARLOS ALBERTO ZELAYA ROJAS** ("**CARLOS ZELAYA**").

Beginning at a time unknown, but prior to December 1, 2011, and continuing to on or about January 1, 2017, all dates being approximate, the defendant, **CARLOS ZELAYA**, knowingly and willfully conspired with Honduran Public Official 1 and others to commit money laundering by using the proceeds of foreign offenses of bribery and misappropriation of public funds in purchasing real estate and conducting financial transactions within the Eastern District of Louisiana.

Government Attorney ___
Defendant ___
Defense Counsel ___

### *The Defendant*

Defendant, **CARLOS ZELAYA** resided and conducted business in St. Tammany Parish, Louisiana.

C&M Motors LLC was a company incorporated in the State of Louisiana on or about August 1, 2011. **CARLOS ZELAYA** was the sole owner.

C&M Wholesalers LLC was a company incorporated in the State of Louisiana on or about April 25, 2011. **CARLOS ZELAYA** was the sole owner when the company was incorporated. On or about July 25, 2011, **CARLOS ZELAYA'S** brother, Honduran Public Official 1, was added as a second owner of C&M Wholesalers LLC. Honduran Public Official 1 was removed as an owner approximately three years later, on or about May 21, 2014.

Honduran Company A was a company, the identity of which is known to the United States, that was incorporated in Honduras in or around September 2012. Honduran Company A was operated by **CARLOS ZELAYA** and another individual.

### *Other Relevant Individuals and Entities*

The Honduran Institute of Social Security ("HISS") was an official agency of the Honduran national government charged with providing social security services to the people of Honduras, including health care, maternity, disability, death benefits, and retirement pensions, using public funds. HISS entered into contracts with private vendors to provide services and supplies.

HISS was governed by a Board of Directors and an Executive Director. The Board of Directors approved certain contracts between HISS and private vendors, and the Executive Director signed the contracts and put them into effect. Once a contract was in place, the Board of Directors' Verification Committee approved the issuance of certain payments to vendors as they

Government Attorney  ⎯⎯
Defendant ⎯⎯
Defense Counsel ⎯⎯

came due under the contract, and the Executive Director signed or caused the checks for payments to be signed.

Unindicted Co-conspirator Honduran Public Official 1, whose identity is known to the United States, was **CARLOS ZELAYA'S** brother who served as the Executive Director of HISS from in or around April 2010 to January 2014.

Unindicted Co-conspirator Honduran Businessman 1, whose identity is known to the United States, was an owner and co-founder of a company incorporated in Honduras in or around 1995 called Compania de Servicios Multiples, S. de R.L. ("COSEM").

Unindicted Co-conspirator Honduran Businessman 2, whose identity is known to the United States, was an owner and co-founder of COSEM.

Honduran Businessman 1's Sister, whose identity is known to the United States, is an Unindicted Co-conspirator and was the owner of a company incorporated in Honduras called Inversiones Inmobiliarias y Turisticas Novaterra ("Inversiones Novaterra").

The Brother-in-Law of Honduran Businessman 1, whose identity is known to the United States, is married to Honduran Businessman 1's Sister and is an Unindicted Co-conspirator.

Unindicted Co-conspirator Honduran Businessman 3, whose identity is known to the United States, operated Honduran Company A in coordination with **CARLOS ZELAYA**.

*The Offenses of Bribery and Misappropriation of Public Funds in Honduras Under Honduran Law*

The Honduran Criminal Code contained offenses against the Republic of Honduras, a foreign nation, including offenses involving acts of public corruption.

The Honduran Criminal Code criminalized several types of bribery; the penalties for the crimes varied depending on the purpose for which the thing of value was given.

Government Attorney
Defendant
Defense Counsel

Article 362 of the Honduran Criminal Code provided as follows: "Any public official who seeks, receives, or accepts, either directly or indirectly, things of value, gifts, offers, promises, or any other undue advantage, in exchange for performing an unjust act that is related to his or her office and that does not constitute a crime, will be [subject to punishment]."

Article 365 of the Honduran Criminal Code provided as follows: "Any public official or public servant who accepts a gift or benefit of any kind from a party to a matter being considered by that public official or public servant will be [subject to punishment]."

The Honduran Criminal Code criminalized several types of misappropriation of state funds.

Article 370 of the Honduran Criminal Code provided as follows: "The public employee or official who appropriates funds, assets, or merchandise whose management, receipt, or custody have been entrusted to him by reason of his position or who participates in those acts for any reason without them having been assigned to him will be [subject to punishment]."

Article 374 of the Honduran Criminal Code provided as follows: "The public employee or official who directly or through another person, or through fraudulent acts, takes an interest, for reasons of personal enrichment, in any contract or transaction in which he is participating by reason of his position, will be [subject to punishment]."

Article 376 of the Honduran Criminal Code provided as follows: "The public employee or official who by reason of his position participates in any legal act in which the State has an interest and agrees with one of the interested parties to defraud the Treasury or with that same purpose takes advantage of his situation to favor a third party or to facilitate his personal participation, directly or indirectly, in the benefits that such matters may produce, or uses another artifice with the same purpose, will be [subject to punishment]."

Government Attorney ___
Defendant ___
Defense Counsel ___

Article 393 of the Honduran Criminal Code defined the terms "public official" and "public servant" as "any natural person who, by law or by virtue of being appointed by the appropriate authority, is involved in discharging public duties or holds a public office or public employment."

Each Article listed above is an offense against a foreign nation, the Republic of Honduras, involving bribery of a public official, or the misappropriation, theft, or embezzlement of public funds by or for the benefit of a public official, as set forth in Title 18, United States Code, 1956(c)(7)(B)(iv).

*The Manner and Means Used to Accomplish the Objectives of the Conspiracy*

**CARLOS ZELAYA** participated in a scheme to use his brother's, Honduran Public Official 1's, position as the Executive Director of HISS to profit personally and through companies **CARLOS ZELAYA** owned and operated in whole or in part, including C&M Motors LLC and C&M Wholesalers LLC. **CARLOS ZELAYA** laundered into the United States and spent approximately $1,364,000 representing the proceeds of bribes paid for the benefit of and as directed by his brother, Honduran Public Official 1, while Honduran Public Official 1 served as the Executive Director of HISS. **CARLOS ZELAYA** also laundered into the United States over $23,000 in funds misappropriated from the government of Honduras through HISS procurement contracts steered to **CARLOS ZELAYA** and Honduran Company A by HISS' Executive Director, Honduran Public Official 1, who also facilitated the payment under the contracts.

*CARLOS ZELAYA and Other Co-Conspirators Laundered Bribe Payments Into the United States*

**CARLOS ZELAYA** and Honduran Public Official 1 laundered the approximately $1,364,000 in bribe proceeds into the United States and used them to purchase nine properties

Government Attorney MRR
Defendant CZ
Defense Counsel

located in this District. They titled those properties in the names of corporations they owned and controlled called C&M Wholesalers and C&M Motors. At the time the properties were purchased, **CARLOS ZELAYA** and Honduran Public Official 1 knew that the $1,364,000 were proceeds of, i.e., generated by, some illegal source. Each of the transactions involved the proceeds of specified unlawful activities as defined by U.S. law.

At the time the properties were purchased, **CARLOS ZELAYA** and Honduran Public Official 1 knew that the $1,364,000 was criminally derived. Each of the transactions involved the proceeds of specified unlawful activities as defined by U.S. law.

Specifically, in or about April 2010, Honduran Public Official 1 was appointed as the Executive Director of HISS. He served as a foreign public official in this office from April 2010 until January 2014.

In or around mid-2010, HISS solicited bids for a project to digitize and load into a database the government of Honduras' records relating to payroll, disability and death benefits, and retirement pensions from in or around 1972 to in or around 2002.

In or around August 2010, COSEM submitted its bid to HISS to work on this project.

On or about December 2, 2010, the Secretary of the Board of Directors of HISS sent a memorandum to the Executive Director, Honduran Public Official 1, informing him that the Board had decided to award the contract to COSEM.

On or about December 6, 2010, COSEM and HISS entered into contract No. 047-2010 (the "COSEM Contract").

The COSEM Contract was signed by HISS' then-Executive Director, Honduran Public Official 1, and COSEM's General Manager, Honduran Businessman 1.

The COSEM contract had a three-year term, from December 6, 2010, to December 6, 2013. The contract obligated HISS to pay COSEM a total of $19,775,000, consisting of a one-time advance payment and several installment payments.

Honduran Public Official 1 had the authority to sign and did sign payment checks to COSEM for work performed under the contract.

After receiving an initial advance payment in or around December 2010 as authorized in the COSEM contract, COSEM was not paid by HISS on a regular basis.

In or around March and April 2011, Honduran Businessman 1 and Honduran Businessman 2 contacted Honduran Public Official 1 to discuss payments to COSEM.

In or around May 2011, Honduran Public Official 1 told Honduran Businessman 1 and Honduran Businessman 2 that he would not cause HISS to make timely payments to COSEM unless Honduran Businessman 1 and Honduran Businessman 2 paid him a bribe of approximately $2 million.

In or around May 2011, Honduran Businessman 1 and Honduran Businessman 2 agreed to pay Honduran Public Official 1 bribes in the total amount of approximately $2 million.

In return for the bribe payments, Honduran Public Official 1 promised to cause HISS to make timely payments to COSEM under its contract with HISS.

Between on or about September 4, 2012, and November 23, 2012, at the direction of Honduran Public Official 1, Honduran Businessman 1 caused four wire transfers totaling approximately $1.08 million to be sent from the bank account of the Panama-incorporated company, Central American Technologies, Inc. ("Central American Technologies Panama"), held at Multibank Panama, to the account of Title Company 1.

Government Attorney MPR
Defendant
Defense Counsel

## Table 1
## $1.08 Million Wire Transferred by Central American Technologies Panama to Title Company 1

| Date of Wire Transfer (on or about) | Sender | Sender Account Information | Recipient | Recipient Account Information | Approximate Amount |
|---|---|---|---|---|---|
| Sept. 4, 2012 | Central American Technologies Panama | Multibank, Panama (acct no. xxxxxx9886) | Title Company 1 | Resource Bank (acct no. xxx2065) | $250,000 |
| Sept. 11, 2012 | Central American Technologies Panama | Multibank, Panama (acct no. xxxxxx9886) | Title Company 1 | Resource Bank (acct no. xxx2065) | $250,000 |
| Oct. 29, 2012 | Central American Technologies Panama | Multibank, Panama (acct no. xxxxxx9886) | Title Company 1 | Resource Bank (acct no. xxx2065) | $250,000 |
| Nov. 23, 2012 | Central American Technologies Panama | Multibank, Panama (acct no. xxxxxx9886) | Title Company 1 | Resource Bank (acct no. xxx2065) | $330,000 |
| | | | | Total: | $1,080,000 |

Title Company 1 and Resource Bank, where Title Company 1 maintained its real estate escrow account, were located in the Eastern District of Louisiana.

In order to disguise the nature, location, source, ownership, and control of the bribe money, the funds were not wire transferred directly from COSEM or from its owners, Honduran Businessman 1 or Honduran Businessman 2. The funds were instead transferred from a bank account in the name of Central American Technologies Panama, a corporation that did not list the names of Honduran Businessman 1 or Honduran Businessman 2 on the Panamanian incorporation documents.

On multiple occasions between on or about September 11, 2012, and November 23, 2012, **CARLOS ZELAYA** spoke on the telephone from the United States with Honduran Businessman 1, who was in Honduras, to ask when the wire transfers were going to be completed.

Government Attorney
Defendant
Defense Counsel

On or about October 30, 2012, **CARLOS ZELAYA** and Honduran Public Official 1 purchased five properties located in this district with $600,000 of the funds that were wire transferred to Title Company 1's account, as set forth in Table 2 below.

In order to conceal and disguise the true ownership of the five properties purchased on or about October 30, 2012, **CARLOS ZELAYA** and Honduran Public Official 1 caused the properties to be titled in the name of the company they owned called C&M Wholesalers LLC.

On or about November 29, 2012, **CARLOS ZELAYA** and Honduran Public Official 1 purchased one additional piece of property located at 1404 N. Hwy 190, Covington, Louisiana 70433. This sixth property was purchased with the approximately $480,000 of bribery proceeds remaining in the escrow account of Title Company 1 from Central American Technologies Panama's previous wire transfers.

In order to conceal and disguise the true ownership of this sixth property, **CARLOS ZELAYA** caused the property to be titled in the name of a company called C&M Motors LLC.

Table 2
**Six Real Properties Purchased with Funds from Central American Technologies Panama**

| Date of Purchase (on or about) | Property Address | Purchaser/Name on Title | Purchase Price |
|---|---|---|---|
| Oct. 30, 2012 | 19237 14th Avenue Covington, LA 70433 | C&M WHOLESALERS LLC | $160,000 |
| Oct. 30, 2012 | 19311 14th Avenue Covington, LA 70433 | C&M WHOLESALERS LLC | $160,000 |
| Oct. 30, 2012 | 19317/19321 14th Avenue Covington, LA 70433 | C&M WHOLESALERS LLC | $210,000 |
| Oct. 30, 2012 | 13th Avenue Parcel Covington, LA 70433 | C&M WHOLESALERS LLC | $26,244 |
| Oct. 30, 2012 | Western 13th Avenue Parcels Covington, LA 70433 | C&M WHOLESALERS LLC | $43,756 |
| Nov. 29, 2012 | 1404 N. Hwy 190, Covington, Louisiana 70433 | C&M MOTORS LLC | $500,000 |
| | | Total: | $1,100,000 |

Government Attorney MBR
Defendant
Defense Counsel

**CARLOS ZELAYA** appeared at and participated in the real estate closing for all six of the properties listed above in Table 2.

Honduran Businessman 1 and Honduran Businessman 2 made additional bribe payments, as agreed upon with Honduran Public Official 1, on or about December 27, 2011, and January 4, 2012. On or about those dates, Honduran Businessman 1 and Honduran Businessman 2 signed and issued two checks in the total amount of $284,000 from the bank account of a company incorporated in Honduras that they owned called CA Technologies S de RL. The checks were made payable to and deposited into a bank account owned by Inversiones Inmobiliarias y Turisticas Novaterra ("Inversiones Novaterra"). Inversiones Novaterra was a company owned, in part, by Honduran Businessman 1's Sister.

**Table 3**
**Checks Totaling $284,000 Issued by CA Technologies S de RL to Inversiones Novaterra**

| Date of Check (on or about) | Check Details | Payor | Payee | Payee Bank | Amount |
|---|---|---|---|---|---|
| Dec. 27, 2011 | Check 27 | CA Technologies S de RL | Inversiones Novaterra | Banco Ficohsa account no. xxxxx2112 | $189,000 |
| Jan. 4, 2012 | Check 29 | CA Technologies S de RL | Inversiones Novaterra | Banco Ficohsa account no. xxxxx2112 | $95,000 |
| | | | | Total: | $284,000 |

The checks dated on or about December 27, 2011, and January 4, 2012, were issued by Honduran Businessman 1 and Honduran Businessman 2 at the direction of Honduran Public Official 1.

Once the checks were deposited into the account of Inversiones Novaterra, Honduran Public Official 1 directed Honduran Businessman 1's Sister to wire transfer the funds to the

Government Attorney MBR
Defendant
Defense Counsel

Hancock Whitney Bank account of Title Company 2, a real estate closing company located in St. Tammany Parish, Louisiana, within the Eastern District of Louisiana.

Table 4
Funds Totaling $297,671 Were Wire Transferred from Inversiones Novaterra
in Honduras to Title Company 2

| Date of Wire Transfer (on or about) | Sender | Sender Account Information | Recipient | Recipient Bank | Amount of Wire Transfer |
|---|---|---|---|---|---|
| Dec. 28, 2011 | Inversiones Novaterra | Banco Ficohsa account no. xxxxx2112 | Title Company 2 | Hancock Whitney Bank Escrow account no. xxxxx2601 | $188,980 |
| Jan. 5, 2012 | Inversiones Novaterra | Banco Ficohsa account no. xxxxx2112 | Title Company 2 | Hancock Whitney Bank Escrow account no. xxxxx2601 | $103,480 |
| Jan. 29, 2012 | Inversiones Novaterra | Banco Ficohsa account no. xxxxx2112 | Title Company 2 | Hancock Whitney Bank Escrow account no. xxxxx2601 | $5,211 |
| | | | | Total: | $297,671 |

Between on or about January 6, 2012, and February 6, 2012, **CARLOS ZELAYA** and Honduran Public Official 1 used the funds that had been wire transferred from a bank account held in the name of CA Technologies S de RL through a bank account held in the name of Inversiones Novaterra to a bank account held in the name of Title Company 2 to purchase three real properties, described below:

Table 5
Three Real Properties Purchased with Funds from CA Technologies S de RL

| Date of Purchase (on or about) | Property Address | Purchase Price |
|---|---|---|
| Jan. 6, 2012 | 425 Depre Street, Mandeville, LA 70448 | $305,000 |
| Jan. 17, 2012 | 717 Heavens Drive, Unit 8, Mandeville, LA 70471 | $70,000 |
| Feb. 6, 2012 | 725 Heavens Drive, Unit 4, Mandeville LA 70471 | $73,000 |
| | Total: | $448,000 |

Government Attorney _MBC_
Defendant _\_\__
Defense Counsel _\_\__

On or about January 6, 2012—the day of the real estate closing for 425 Depre Street, Mandeville, Louisiana—**CARLOS ZELAYA**, Honduran Public Official 1, and a notary met at Title Company 2.  At the meeting, **CARLOS ZELAYA** signed a power of attorney to act on Honduran Public Official 1's behalf with respect to the purchase of properties located at 717 and 725 Heavens Drive.

On or about January 17 and March 2, 2012, **CARLOS ZELAYA** signed the real estate closing documents on Honduran Public Official 1's behalf for 717 and 725 Heavens Drive.  At the closing for 725 Heavens Drive, **CARLOS ZELAYA** arrived with a cashier's check in the amount of $43,333 drawn on the account of C&M Wholesalers that was used to pay a portion of the purchase price for the property.

These three properties were titled in the name of Honduran Public Official 1.

***CARLOS ZELAYA and other Co-Conspirators Attempted to Further Cover-Up and Conceal the Bribe Payments***

In early 2014, Honduran Public Official 1 ceased serving as the Executive Director of HISS.  In or around February of that year, a court in Honduras issued a warrant for his arrest and an International Police Organization (INTERPOL) Red Notice was published, putting the public on notice of the existence of said arrest warrant.

During the same time period, in or around January or February 2014, **CARLOS ZELAYA** had telephone conversations with Honduran Businessman 1.  **CARLOS ZELAYA** stated that he wanted to make the $1.08 million used for the six property purchases made between on or about October 30, 2012, and November 29, 2012, appear to be legal.

Government Attorney
Defendant
Defense Counsel

**CARLOS ZELAYA** agreed with Honduran Businessman 1 that in order to cover-up the nature of payments, they would execute a fraudulent promissory note that would falsely characterize the $1.08 million bribe payment as a loan.

On or about January 25 or January 26, 2014, **CARLOS ZELAYA** traveled from New Orleans to Miami.

On or about January 25 or January 26, 2014, **CARLOS ZELAYA** met with Honduran Businessman 1's Brother-in-Law in Miami and signed a fraudulent promissory note. The fraudulent note was backdated to June 22, 2012. The fraudulent note purported to describe a loan in the amount of $1.08 million from Central American Technologies Panama to **CARLOS ZELAYA** and C&M Wholesalers. In truth and in fact, both parties knew that there was no loan and no repayments were expected to be made under the fraudulent promissory note.

Likewise, at a date unknown, but after January 29, 2012, Honduran Public Official 1 asked Honduran Businessman 1's Sister to create false and fraudulent documentation to account for the $297,671 in funds wire transferred by Inversiones Novaterra to Title Company 2 in an effort to further conceal and cover-up the source of the funds.

Honduran Businessman 1's Sister created the fraudulent documentation in the form of "Contract[s] to Promise to Buy and Sell" real estate between her husband—who was also the Brother-in-Law of Honduran Businessman 1—and Honduran Public Official 1. She provided these documents to Honduran Public Official 1.

### *CARLOS ZELAYA and Other Co-Conspirators Also Laundered Funds Misappropriated from the Government of Honduras into the United States*

Honduran procurement laws prohibited HISS from entering into purchasing or services contracts with or for the benefit of Honduran Public Official 1, his brother **CARLOS ZELAYA**,

Government Attorney
Defendant
Defense Counsel

or any corporate entity in which they held an interest. Nonetheless Honduran Public Official 1, **CARLOS ZELAYA**, and others obtained payments from HISS by disguising these prohibited relationships, in violation of Honduran criminal laws against misappropriation of public funds, and transferred some of those illegal proceeds into the Eastern District of Louisiana.

Specifically, in or around July 2011, Honduran Public Official 1, while serving as the Executive Director of HISS, directed **CARLOS ZELAYA** to solicit a bid for office equipment for HISS.

**CARLOS ZELAYA** solicited a bid and, in or around July 2011, that bid was provided to HISS. Thereafter, **CARLOS ZELAYA** was paid a commission of $4,000, which he deposited as cash into a United States bank account held in his name.

In or around September 2012, Honduran Company A was incorporated in Honduras. The company was operated by Honduran Businessman 3.

On or about February 28, 2013, Honduran Public Official 1—in his role as Executive Director of HISS—authorized a payment to Honduran Company A of 1,699,700 Honduran Lempiras (approximately $83,800) from a line of credit extended to HISS by a financial institution located in Honduras. At the time, Honduran Public Official 1 knew well that Honduran Company A was acting in partnership with his brother, **CARLOS ZELAYA**, and that **CARLOS ZELAYA** had an agreement with Honduran Businessman 3 to split the profits from the HISS payment. The government of Honduras was responsible for repaying the bank for this line of credit.

In or around March 2013, a financial institution located in Honduras issued a check to Honduran Company A in the amount of 1,699,700 Honduran Lempiras (approximately $83,800) from the line of credit extended to HISS. The check was deposited into Honduran Company A's bank account.

Government Attorney ___
Defendant ___
Defense Counsel ___

Honduran Company A used approximately half of those funds to purchase office equipment for HISS.

Approximately $19,441 of those funds was sent by wire transfer from Honduran Company A's bank account to a bank account in the United States maintained by **CARLOS ZELAYA** in the name of C&M Motors which **CARLOS ZELAYA** used for his own benefit.

***CARLOS ZELAYA and Honduran Public Official 1 Conspired to Collect and Spend the Rental Income Generated From the Real Properties Purchased With Bribe Proceeds***

On or about January 13, 2015, the United States filed a Verified Complaint for Civil Forfeiture in the United States District Court for the Eastern District of Louisiana seeking forfeiture of the nine real properties purchased with bribes paid by Honduran Businessman 1 and Honduran Businessman 2 (through their companies) for the benefit and at the direction of Honduran Public Official 1—the then-Executive Director of HISS—and all rental income derived therefrom. *See United States v. Real Property Located at 1404 N. Hwy. 190, et al.*, No. 15-74 (Jan. 13, 2015). C&M Motors LLC, C&M Wholesalers LLC, and Honduran Public Official 1 filed claims in the United States' forfeiture case. The civil forfeiture complaint was an *in rem* action, that is, an action in which the defendants are real estate or other property, rather than persons.

Six of the defendant *in rem* properties listed in the United States' civil forfeiture complaint were homes or apartment buildings which Honduran Public Official 1 and **CARLOS ZELAYA** caused to be rented to tenants who made monthly rental payments and security deposits (hereinafter, the "civil defendant rental properties").

Beginning at a time unknown but prior to January 2015, and continuing through at least August 10, 2016, **CARLOS ZELAYA** was the landlord for each of the civil defendant rental properties. During this time, **CARLOS ZELAYA** collected monthly rents from the tenants of

Government Attorney MBR
Defendant
Defense Counsel

these properties and, by agreement with Honduran Public Official 1, transferred much of the rental proceeds to the family of Honduran Public Official 1.

On or about October 5, 2015, the United States District Court for the Eastern District of Louisiana issued a restraining order directing **CARLOS ZELAYA** to deposit into his attorney's trust account, all rental income he had collected from the civil defendant rental properties going back to July 1, 2015, continuing through the date of the restraining order, and then on a monthly basis going forward. The Court directed **CARLOS ZELAYA** to deposit those collected funds into his attorney's trust account and directed his attorney to keep an accounting of rental income deposited into the attorney's trust account and of any monies withdrawn to pay for expenses associated with maintaining or repairing the properties. Under the Court's order, that accounting was supposed to be made available to the Court and to counsel for the United States to review at any time during the pendency of the civil forfeiture case.

Throughout this time, and in knowing violation of the federal restraining order, **CARLOS ZELAYA** continued to collect rents from the tenants of the civil defendant rental properties and to spend them for the benefit of himself and the family of Honduran Public Official 1.

On or about July 28, 2016, **CARLOS ZELAYA** testified under oath in a proceeding in the United States District Court for the Eastern District of Louisiana during a hearing to show cause why he should not be held in contempt for failing to produce an accounting of rental income and expenses as directed in the October 5, 2015, federal restraining order. During his testimony, **CARLOS ZELAYA** stated that he believed that he had transferred more than fifteen thousand dollars of rental receipts by check to his attorney in compliance with the federal restraining order. This testimony was false, in that **CARLOS ZELAYA** then well knew that he had not transferred these funds to his attorney but had used them for other expenses.

Government Attorney _MBR_
Defendant _[initials]_
Defense Counsel _[initials]_

**CARLOS ZELAYA** also provided false written answers under penalty of perjury during discovery proceedings in the federal civil forfeiture case. In July 2015, the United States sent written interrogatories to claimants C&M Motors LLC and C&M Wholesalers LLC through its attorney, seeking information relevant to the United States' civil forfeiture case. One of the questions directed to each company required the company to state all facts it contended supported its assertion that the company was an innocent owner of the property that the United States alleged was purchased with the proceeds of bribes paid for the benefit of Honduran Public Official 1.

On or about December 22, 2015, C&M Motors LLC and C&M Wholesalers LLC each provided the United States with answers to these interrogatories, and **CARLOS ZELAYA** signed, verified, and swore that the answers were true and correct under penalty of perjury, on behalf of his each company. In each set of answers, **CARLOS ZELAYA** stated that "[c]laimant obtained a loan for $1,080,000.00 from Central American Technologies, Inc. to purchase the Defendant Real Properties . . . . Carlos Zelaya-Rojas, as the owner of C&M Motors LLC [and C&M Wholesalers LLC] executed a promissory note in favor of Central American Technologies, Inc. evidencing the loan." In truth and in fact, as the defendant then well knew, neither **CARLOS ZELAYA** nor either of his companies had obtained a loan for $1,080,000 to purchase the properties.

In furtherance of the conspiracy and to achieve the objects thereof, **CARLOS ZELAYA** committed and caused to be committed the following overt acts, among others, in the Eastern District of Louisiana and elsewhere.

On March 7, 2016, **CARLOS ZELAYA** caused a deposit of $3,050 U.S. currency and three personal checks totaling $2,695 into the C&M Motors LLC checking account at Whitney Bank, ending in 8874. Two of the three checks, in the amounts of $795 and $1,100, were notated

Government Attorney \_\_\_\_\_
Defendant \_\_\_\_\_
Defense Counsel \_\_\_\_\_

as payment for "rent," and a third check in the amount of $800 was signed by a known tenant of one of the civil defendant rental properties.

On the same date, March 7, 2016, **CARLOS ZELAYA** caused a transfer of $10,908 from C&M Motors LLC checking account at Whitney Bank, ending in 8874, to a known used car auction and consignment service.

### Real Properties Purchased with Foreign Bribery Proceeds

The defendant, **CARLOS ZELAYA**, acknowledges and agrees that each of the real properties listed in the Notice of Forfeiture in the Bill of Information are proceeds of and properties involved in the conspiracy to commit money laundering described above and charged in Count 1 of the Bill of Information.

The Louisiana corporate entities C&M Motors LLC and C&M Wholesalers LLC were created by and are completely owned and controlled by the defendant, **CARLOS ZELAYA**. The defendant acknowledges and agrees that each of these entities was at all times and is now an alter ego of the defendant; that is, the defendant maintained sole control over each entity and used it merely as an agency for transacting his own private business.

The defendant acknowledges that each of the entities C&M Motors LLC and C&M Wholesalers LLC was created and used as part of the conspiracy to commit money laundering described above and charged in Count 1 of the Bill of Information. C&M Motors LLC was created in part to receive and conceal the true nature, source, and control of the above-described foreign bribery payments; to purchase and hold the real property located at 1404 N. Hwy. 190 in St. Tammany Parish; and to spend some of the other laundered funds described above for, among other things, the operation of the used car business subsequently established at 1404 N. Hwy. 190. C&M Wholesalers LLC was created in part to receive, spend, and conceal the true nature, source,

Government Attorney MBR
Defendant
Defense Counsel

and control of the above-described misappropriated foreign public funds, and to purchase and hold five additional real properties described above using foreign bribery payments.

## Limited Nature of Factual Basis

This proffer of evidence is not intended to constitute a complete statement of all facts known by the defendant, **CARLOS ZELAYA**, but rather is a minimum statement of facts intended to prove the necessary factual predicate for the guilty plea. The limited purpose of this proffer is to demonstrate that there exists a sufficient legal basis for the defendant's plea of guilty to Count 1 of the Bill of Information.

**APPROVED AND ACCEPTED:**

_____  6/27/18
CARLOS ALBERTO ZELAYA ROJAS  (date)
Defendant

_____  6/27/2018
MICHAEL B. REDMANN  (date)
Trial Attorney

_____  6/27/17
DAVID ROZAS  (date)
Counsel for Defendant

Page 19 of 19

Government Attorney _MBR_
Defendant _CZ_
Defense Counsel _DR_