AUGUST 2018

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
500 POYDRAS STREET
NEW ORLEANS, LA 70130

RE: CRIMINAL CASE NO.2:180-CR-00086
UNITED STATES
V
CARLOS ALBERTO ZELAYA ROJAS

U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
FILED AUG 31 2018
WILLIAM W. BLEVINS
CLERK

By this means, I, Mario Roberto Zelaya Rojas, Honduran, adult, married, orthopedic surgeon and of this domicile, allow me to present to the Honorable Martin LC Feldman, Judge of the District of the United States, the following:

1. I am currently deprived of my liberty in an annex module of the National Penitentiary of Honduras that is located in the 1st.Infantry battalion in El Ocotal, Francisco Morazán in Honduras, since September 9, 2014 since I am in legal proceedings against me.

2. On August 7 of this year I was notified by personnel of the Honduran Prosecutor's Office, Mr. Delcides Martínez Acosta (Prosecutor) and Rony Carranza (Agent) of the first notice of confiscation and procedure for third-party claimants dated July 30, 2018 and signed by Michael B. Redmann. Mr. Martinez and Carranza told me that they came on behalf of the prosecutor's office of Louisiana to give me this notification, which is related to criminal case No. 2: 18-cr-00086, United States of America V Carlos Alberto Zelaya Rojas.

3. In this document there are three properties listed that I acquired **LEGALLY** in the year 2012 in Mandeville, Louisiana

through Mr.Buttler Ball of North Lake Title , and for which I have the right to claim them as my own for the benefit of my wife, Susana Tirado Amaya and our children José Mario, Julio Fernando and Javier Alejandro Zelaya Tirado, aged 17, 14 and 12 respectively.

4. These properties that I claim as my own are:

a) 425 Depre Street, Mandeville, Louisiana 70448, described as Lots 37 and 38 of Square 32, Mandeville, Louisiana (425 Depre Street).
b) 717 Heavens Drive, Unit 8, Mandeville Louisiana 70471, described as Unit 717-8 Branford Row Condominium on Lots 13,14,15,16,17,18,19 and 20 of Square 2 (717 Havens Drive) and,
c) 725 Heavens Drive, unit 4, Mandeville Louisiana 70471, described as unit 725-4 Bradford Row Condominium on Lots 13, 14 , 15 , 16,17,18,19 and 20 of Square 2 ("725 Heavens Drive).

Currently these assets do not appear in my name because in April of 2017, my Wife learned that the properties were in TAX Sale because the Administrators appointed by the Prosecutor's Office had not paid the taxes. Therefore on May 1, 2017 a conference call between attorney John Musser, Judge Susie Morgan, staff prosecutors and my wife Susana Tirado, "where Judge Morgan pointed out in page 8, line 25 that "The property here, we need to take care of this tax thing..." after Mr Musser stated that he would send the copy of the tax sale documents from the sheriff's office to Mr Gibbons, page 8, lines 15-19 of the transcripts of the Telephone Status Conference.

Obviously Mr Gibbons did not fulfill that matter because now they appear in the name of Nectar Assets/Hmo Harris. The payment of the taxes was an obligation of those who were administering those apartments, not of my person this puts in risk the patrimony of our children.

5. For the LEGAL acquisition of said properties I used own funds that I had in the United States and funds from transfers sent from

Honduras by Mr. Marco Jaen, Administrator of the Novaterra Real Estate and Investment Company , and proceeds from the advance payment for the sale of a land of 2 blocks in the Municipality of Valle de Angeles, Department of Francisco Morazán, Honduras, Central America . Mr. Jaen transferred to the Whitney Bank account of North Lake Title the amount of $ 370,571 in four transfers and not $ 297,671 as argued in his table 4, page 12 the Eastern District of Louisiana prosecutor's office in the criminal case No.18-086 section F MAG 1, ignoring the first transfer of $ 72,900 on December 21, 2011. My question is: Why did the New Orleans Public Prosecutor's Office not mention that transfer of $ 72,900? Why did Mr. Jaen transfer to my person $103,480 on January 5th 2012, if Mr. Oscar Lainez claims that he made a check for $95,000 the amounts clearly do not coincide. My negotiation for the sale of the property was always with Mr. Jaen, not with Oscar Lainez

6. These transfers were made by Mr. Marco Jaen, Novaterra Investment Manager , to comply with what was agreed as an advance as described in the promise to purchase the Valle de Angeles land signed by Mr. Jaen and myself on December 13, 2011 , which is duly NOTARIZED by the Attorney Adriana Palma, besides being in that promise of purchase duly certified by the Supreme Court of Justice of Honduras and apostilled by the Ministry of Foreign Affairs of Honduras, which gives it the character of LEGAL to said document, rebutting numeral 61, pages 14 and 15 of the Indictment of the criminal case 18-086, SECT. FMAG1. Furthermore, and to further demonstrate the legality of said document, it was accepted by the judges from the Court of Judgment No. 2 of the Supreme Court of Justice of Honduras, as *proof of my defense in the trial carried out in Tegucigalpa, Honduras.* in February of the year 2017, according to file 18-81-2015 and that can be corroborated in the audios of said trial. It is to be noted that at no time of the initial hearing in September 2014, nor in the deposition of Oscar Lainez and Jorge Herrera, nor in the Trail from January to March 2017, witnesses nor the prosecution mention false documents provided by the sister of a businessman for allegedly legitimizing the transfer of Novaterra to

North Lake Title, so I do not know what the New Orleans prosecution's based themselves on to makes these accusations in the indictment in paragraphs 61 and 62 although such evidence was presented at trial in 2017 and were not contested either by the prosecution or witnesses as false evidences.

7.  All the documentation that shows the successive tract and the LEGALITY of the purchase of the three properties I have duly certified by the Supreme Court of Justice of Honduras and apostilled by the Ministry of Foreign Affairs, which I will translate into English and certify but initially I will send the translations.

8.  I am obliged to show that the accusation by the New Orleans Prosecutor's Office is wrongly formulated because it is based on what counts as Count 1 ( conspiracy to commit money Laundering), in the statements by Oscar Laínez Reina and Jorge Daniel Herrera, witnesses of the Honduran prosecutor's office in the case 18-81-2015 and from which the request of Honduras was derived to secure the properties listed, and also the prosecutor's office New Orleans charges me on counts that are not part of the file 18-81-2015.

9.  That said, it is important to demonstrate the lack of credibility of these witnesses, since they testified under oath before Honduran judges and gave facts other than what was declared before US attorneys and before Attorney Josep Interiano in a deposition they gave in Tegucigalpa Honduras September 24 and 25, 2015 , also in the presence of the Attorney Hector Morales, Chief of the National Fiscal Support Unit of Honduras and Diana Moreno, Expert from the Honduran Prosecutor's Office who had to report such inconsistencies .

10. At the initial hearing in Honduras on September 14, 2014 in the case 18-81-2015, Mr. Lainez and Herrera argued that with respect to the IHSS-COSEM contract they had "A PAIR OF DELAYED PAYMENTS" and that is why they met with me "At the end of August, beginning of September", the foregoing can be found on folio 469, lines 25 to 27 and Folio 473, lines 8 and 9 . The foregoing is false, since pages 809, 814 and 821 show the

payments for the month of June and August 2011, which are part of the file 18-81-2015. There were no delays in payments in the months that the witnesses point out.

In addition, the witnesses declared in the deposition of September 24 and 25, 2015, that the first meetings to discuss the alleged arrears in payments were in March or April (deposition of Oscar page 48, line 21-25 and Jorge, page 52, lines 9-22).

On September 2015, in the deposition made before North American prosecutors regarding the same case, they argued that it was a gap of 6 months (from January to June 2011) in which no payment had been received (pages 45 deposition of Oscar, line 23 to 25 and page 46, line 1 to 6, page pages of Jorge 50, lines 10 to 12). This is false because under the contract, 20% advance payment delivered in December 2010, the next payment was in the month of June 2011, as stated by the expert from the prosecution Mrs. Tesla del Cid at trial in January - February 2017 in Honduras and that can be heard in the audio of it. Also in the documentation presented by the Prosecutor's Office in the trial regarding the payments from 2011 that are in pages 793 to 860 it can be verified that the first invoice presented by COSEM ON APRIL 12, 2011 (page 818) and it is on the 24th of May 2011 that the Project Manager, Attorney Victor Martinez Caceres, signs the Minutes of receipt in accordance with the deliverables, an action that was essential to initiate payment management (page 819) and sends a Memorandum to me on May 24, 2011 ( page 817) requesting payment authorization on May 26, 2011 payment is authorized (page 816) and the documentation is analyzed by the administrative departments and the payment issuance is ordered June 3, 2011 (page 815), issuing and signing the check the same day (page 809) and cashed the same day June 3, 2011 by COSEM (page 814).

11. It is very important to note that both witnesses acknowledge that prior to the start of the payment process, the Project Manager, Attorney Victor Martinez, had to receive all the documentation, analyze it and, once agreed, signed the receipt. This can be verified in the deposition of Oscar, page 44, lines 14-22 and in the deposition of Jorge, page 49, lines 3 to 11. In addition, Jorge Herrera in the initial hearing of September 14, 2014 recognizes the above in page 473, line 19 - 21.

I respectfully request that you listen with the assistance of a translator, the statement of Attorney Victor Martinez in the January / February 2017 trial.

12) If you analyze the documents that appear in pages 793 - 860 with respect to the payments made from the IHSS to COSEM from the advance of 20% in December 2010 until December 2011, you will see that once the Attorney Victor Martinez sent the reception certificate there was no delay in contract payments.

13) That said, if there was NEVER a late payment of the contract, there was no need to meet to discuss late payments, much less to request or giving handouts in exchange for the payments be done. Witnesses lied, and not only with the issue of payments.

14) Mr. Lainez and Herrera declared at the initial hearing on September 14, 2014 that they met with me to discuss the supposed payment delays (Oscar: page 468R, lines 15-18 and Jorge: page 473, lines 8-17) and talk about the alleged payments that I was requesting. The strange thing is that Jorge Herrera in the deposition page 51, line 18 to page 53 line 12 denies having met with me at any time! Even though the previous day Oscar in his deposition said otherwise on page 50, line 5-9, saying also that the meeting had been in May or June and not in August / September as he stated on September 14, 2014 in the initial hearing. Both lie, there was never a meeting.

15) Other incongruences in their statements is with regard to the approach they had with me to discuss the possibility that would help them win the tender for this purpose, in mid 2010 they both invited me to lunch to ask me to help them win the tender. See page 468 lines 27 to 35 and the deposition of Oscar page 36, line 13 to page 37, line 14 .... Both were in that meeting. However, Jorge Herrera declares on September 14, 2014 in page 472R, lines 23 to 25 stating that it was my Father who they approached and contrary to what was declared by his deposition partner denied having met me and discussed the tender, see page 46, lines 4-12 of their deposition. Inconsistency that shows that they are not reliable witnesses.

16) As a final example, among others I could mention, it is what was declared as presumed cause of the delay of payments. In his deposition (page 46, lines 5-18) Oscar Lainez states that I TOLD him that they were

prioritizing payments in the IHSS due to financial problems, however in the initial hearing page 471, lines 25 and 26, he declared that I did not inform him of the cause of the delays. The lawyer Víctor Martínez, before the Judge's question in the judgment declared that the reserve funds for that contract were of 13 thousand Millions of Lempiras ($ 650 million Dollars) you can hear this in the audios of the judgment.

17) The witnesses also lied when they declared that they had cash flow problems in the first semester of 2011 according to Oscar in his deposition, page 46 line 21 to page 47, line 21 to page 47 line 2 and Jorge in his deposition page 52 line 19 to page 53 line 2, contrary to what the screenshots reflect sent by FICOHSA Bank sent that are from page 1548 to 1560, where it is not appreciated that in the first semester of 2011 they have run out of money in the trust account.

18) Your Honor, I could continue to point out many more incongruences in the statements of these witnesses but I believe that with the above and the documentary evidence I have managed to show that they lied. I pray to God you allow me to take my statement via SKYPE so I can expose all this more widely.

19) Your Honor, I can not explain why the prosecution in New Orleans did not take my deposition in September 2015 when they took Oscar Lainez and Jorge Herrera. I have not had the right to defend myself; furthermore, in the exhibition that they do in the Indictment against my Brother in Count 1, numerals 15 to 22, they enumerate a series of articles of the Honduran Penal Code that were not pointed out against me in the cause 18-81-2015 in Honduras, to exception of 365 (numeral 16), for which reason I was tried in Honduras from January to March 2017 and of which I have not yet received a written judgment. It is to be noted that cause originates the cause against my brother.

It is also important to point out that in the civil case No. 15-74 "E" regarding this properties, the DA from New Orleans stated in numeral 49 that I earned $218,874 as the director of the HISS in the years 2010-2014, which is true, and that as a doctor (Orthopedic Surgeon) in Honduras I earned in the years 2010-2013 an extra $170,836, which is NOT TRUE, because my income as an Orthopedic Surgeon from 2010-2012 were $277,289.65, not counting the year 2013. All these can be verified with

the notarized, certified and apostillé copies of my IRS statements from Honduras I will present to that Court, Your Honor.

Also, in numeral 50 of that same case they state that my a average yearly incomes from 2006-2009 were $25,000, which is also NOT TRUE. My incomes in those years were:

2006: $137,374.19 ($1= Lps.19.0272)

2007: $158,042.68 ($1= Lps. 19.0271)

2008: $242,410.92 ($1= Lps. 19.0299)

2009: $269,261.95 ($1= Lps. 19.0273)

All of the above can be verified with my IRS statements from Honduras.

I want to believe that the DA of New Orleans didn't give that false information on purpose, but got it from the DA's office of Honduras, which denotes a clear bad intention against me.

20) For all the above I respectfully request the Court to consider take declaration via teleconference to defend the properties that by law are entitled to my children and my wife, I would allow me to thoroughly explain the matter.

21) Likewise, Mrs. Elsy Zuniga Amador will be allowed to present the expert reports she presented in the case 18-81-2015 as part of the defense where she demonstrates that there were no delays in the IHSS payments to COSEM and the study that demonstrates the legal form in which I acquired the three assets that I am claiming, also by way of teleconference.

22) Attached is documentary proof translated into English and which will be submitted to the legalization process in the Ministry of Foreign Affairs of Honduras.

23) Also I am sending a USB with the complete audio of the trial of the cause 18-81-2015 carried out in Tegucigalpa; Honduras, from January to March 2017.

which I acquired the three assets that I am claiming, also by way of teleconference.

22) Attached is documentary proof translated into English and which will be submitted to the legalization process in the Ministry of Foreign Affairs of Honduras.

23) Also I am sending a USB with the complete audio of the trial of the cause 18-81-2015 carried out in Tegucigalpa; Honduras, from January to March 2017.

24) I would be very grateful if you were to accept my request to notify my wife via Telephone (985) 956-1394 or to the address: Susana Tirado 717 Heavens Drive, Apart. 8, Mandeville, Louisiana, 70471.

, Sincerely

_____
MARIO ROBERTO ZELAYA ROJAS

August 27th, 2018
DATE

**Certificate of Service**
I hereby certify that I have served a copy of this document on all counsel of record either in person or my mailing it postage prepaid on this 31 day of August, 2018.

_____
Signature

717 Heavens Dr #8
Mandeville, LA
70471
(985) 956 1394