**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL DOCKET NO: 18-86** |
| **v.** | * | **SECTION: "F"** |
| **CARLOS ALBERTO ZELAYA ROJAS** | * | |
| | * * * | |

**MOTION TO STRIKE THIRD-PARTY PETITIONS
AND ISSUE FINAL ORDER OF FORFEITURE**

**NOW INTO COURT** comes the United States of America, by and through undersigned counsel, who respectfully submits this motion to request that the Court dismiss the third-party ancillary petitions filed by Mario Zelaya and Susana Tirado-Zelaya, because they fail to meet mandatory statutory requirements and fail to state a claim for which relief may be granted, and issue a final order of forfeiture. In support its motion, the government avers as follows:

**I.     Introduction and Summary**

The Court's preliminary order of forfeiture, issued July 5, 2018, forfeited to the government nine parcels of real estate in St. Tammany Parish, subject to public notice and adjudication of any third-party ancillary petitions. The defendant Carlos Alberto Zelaya Rojas ("Carlos Zelaya") acknowledged in his factual basis, adopted under oath at his rearraignment hearing, that these nine properties were purchased by him with criminal proceeds as part of the conspiracy between himself and his brother Mario Zelaya,[1] the former executive director of the national social security agency of Honduras ("HISS"), and others, to launder bribe payments and public funds embezzled from HISS. Carlos Zelaya signed all relevant closing documents for the

---

[1] In previous pleadings in the above-captioned criminal matter, Mario Zelaya has been labeled as "Honduran Public Official 1," because he was an unindicted co-conspirator. However, because he has now identified himself and Marco Jaen, another unindicted co-conspirator previously labeled as "Brother-in-law of Honduran Businessman 1," by name in his third-party petition, the government uses their proper names herein.

nine properties and directed the financial transactions used to purchase them. Carlos Zelaya further acknowledged in his factual basis that he and Mario Zelaya went to great lengths to make the overseas bribe payments appear to be legitimate commercial transactions by creating false and back-dated documents, in particular a fake business loan contract in the amount of $1,080,000.00 (the "fake loan contract"), and a fake "Contract to Promise to Buy and Sell" approximately $300,000 of real estate in Valle de Ángeles, Honduras (the "fake purchase agreement"). Carlos Zelaya agreed that he had "provided false written answers under penalty of perjury" when he stated in response to interrogatories in a related civil action in this Court that the fake loan contract was a genuine contract, as there was never any such loan.

Following the issuance of the preliminary order of forfeiture, the government served notice of the order on all interested parties and published notice online as required under 21 U.S.C. § 853(n). That statute permits any third party with an interest in property forfeited in a criminal case to petition the Court to recognize the interest on either of two grounds: (a) that the petitioner acquired a superior property interest prior to the date of the conduct forming the criminal conviction; or (b) that the petitioner subsequently acquired the interest in a bona fide transaction and was reasonably without knowledge of the criminal conduct. U.S. Assets LLC, a company that invests in property slated for local tax sale, responded to the government's notices by submitting affidavits certifying its interests in several of the forfeited properties, acquired by paying past-due St. Tammany Parish property tax bills at public tax sales. The government herein requests that U.S. Assets LLC's interests be acknowledged in a final order of forfeiture, because they meet the second ground for relief under § 853(n); that is, because U.S. Assets LLC acquired legal rights in the properties through bona fide transactions without knowledge of the defendant's criminal conduct.

Mario Zelaya and his wife, Susana Tirado-Zelaya, have also filed documents with the Court that may be deemed third-party petitions under § 853(n) relating to three out the nine properties. However, neither of these petitions is signed under penalty of perjury as required by § 853(n), a requirement highlighted in the legal notices that they received.  Moreover, neither petition states a claim for which relief may be granted, as neither alleges (a) an interest acquired prior to the conduct for which Carlos Zelaya was convicted nor (b) a subsequent interest perfected in a bona fide transaction without knowledge of the criminal conduct.  Mario Zelaya's petition merely re-asserts the fraudulent claims that Carlos Zelaya, in pleading guilty, has acknowledged were a corrupt cover-up of bribe payments, and the petition otherwise relies upon misleading statements about Mario Zelaya's 2017 criminal conviction for bribery in Honduras.  The petition of Susana Tirado-Zelaya requests leniency, as she lacks a U.S. visa and the government has to date allowed her and her children to continue to live rent-free in one of the properties; however her petition does not assert that she has any legal interest in any of the properties.  For these reasons the government respectfully submits that the Court should dismiss these petitions under Fed. R. Crim. P. Rule 32.2(c)(1)(A) and issue a final order of forfeiture.

**II.      Factual and Procedural Background**

On April 27, 2018, the defendant Carlos Zelaya was indicted for conspiracy, money laundering, impairing a court's jurisdiction over property subject to forfeiture, impeding an official proceeding, and perjury. (Rec. Doc. 1).  The conduct alleged in the indictment related to a scheme by Carlos Zelaya, Mario Zelaya, and others to wire bribes and embezzled public funds from banks in Honduras to banks and title companies in Louisiana, and to cover up the transactions by creating false documents, including the fake loan contract and the fake purchase agreement, and by later submitting those documents and making other false statements to this Federal Court.

3

On June 27, 2018, the defendant pleaded guilty to a superseding bill of information that incorporated the conduct alleged in the indictment into a single count of conspiracy to commit money laundering under 18 U.S.C. § 371 and that included a notice of forfeiture listing the nine parcels of real estate in St. Tammany Parish acquired through the defendant's crime. (Rec. Doc. 27).

The defendant acknowledged in his written factual basis, signed and adopted under oath at his plea hearing, that he participated in the purchase of all nine parcels of real estate; that the parcels were the proceeds of transactions used to launder bribes and embezzled funds; and that the conspirators created the fake loan contract and the fake purchase agreement after the fact, in an effort to cover up the illegal sources of funds. (Rec. Doc. 29). The fake loan contract in the amount of $1,080,000.00 was intended to disguise the illegal source of funds for six of the parcels in St. Tammany, including the used car lot. *Id*. at 13. The fake purchase agreement, entitled "Contract to Promise to Buy and Sell," was intended to cover up the illegal source of funds used to buy the other three properties: 425 Depre Street; 717 Heavens Drive, Unit 8; and 725 Heavens Drive, Unit 4 (the "Depre Street and Heavens Drive properties"). *Id*. Carlos Zelaya acknowledged that he "provided false written answers under penalty of perjury" in a matter before this Federal Court when he stated in response to interrogatories that the fake loan contract was a genuine contract, as he in fact knew that the answers were false and that there had been no such loan. *Id*. at 17. The defendant acknowledged throughout his factual basis that Honduran Public Official 1, his brother Mario Zelaya, was a central coconspirator in his crime.

On July 5, 2018, the Court issued a preliminary order of forfeiture, forfeiting all nine parcels of real estate to the government subject to public notice and adjudication of any third-party ancillary petitions. (Rec. Doc. 33).

Between July 10, 2018, and August 9, 2018, the United States published notice of the forfeiture order on www.forfeiture.gov, stating the government's intent to dispose of the nine properties and the right of third parties to petition the court within thirty days of the final publication date for a hearing to adjudicate the validity of any alleged interest in the forfeited properties. A sworn declaration of publication is attached hereto as Exhibit A.

The government also gave direct notice to several third parties, including U.S. Assets LLC, which had filed liens against some of the properties. U.S. Assets LLC was served with notice and responded with affidavits certifying the amounts due under the liens. The government has verified the amounts certified by U.S. Assets LLC with St. Tammany Parish tax records and applicable law. The government hereby acknowledges that U.S. Assets LLC has a lien on the following real properties resulting from its payment of St. Tammany Parish property taxes on the properties for tax years 2014 through 2017. The government and U.S. Assets LLC agree that the following amounts of principal, legal interest, and legal penalties for past taxes are due to U.S. Assets LLC as of September 1, 2018; and if not previously satisfied, the government shall pay the following amounts to U.S. Assets LLC from the proceeds of the sales of the real properties upon disposition, plus per diem legal interest of one percent per month after September 1, 2018:

| Real Property | Tax Principal Paid 2014-2017 | Interest + Penalty as of 9/1/2018 | Total Due as of 9/1/2018 |
|---|---|---|---|
| 19317 14th Avenue | $10,376.16 | $2,824.06 | $13,200.22 |
| 19327 14th Avenue | $8,662.23 | $2,363.64 | $11,025.87 |
| 425 Depre Street | $17,622.99 | $4,613.18 | $22,236.17 |
| 725 Heavens Drive #4 | $4,961.88 | $1,403.60 | $6,365.48 |
| 717 Heavens Drive #8 | $4,769.77 | $1,329.22 | $6,098.99 |
| Total: | | | $58,926.73 |

Legal notice was also delivered to the defendant's wife, Nora Maria Rodas Quito, on or about July 24, 2018, by USPS certified mail at her residence, 301 Cedarwood Drive, Mandeville, Louisiana 70471.

Legal notice was also delivered by USPS certified mail on or about July 26, 2018, to Bradford Row Condominiums Homeowners Association, Inc. ("Bradford Row"), which had listed a lien against 717 Heavens Drive #8 and 725 Heavens Drive #4 for unpaid dues, at the address listed in the lien and another publicly listed address: 5001 Highway 190, Suite C3, Covington, LA 70433; and c/o GNO Property Management, 826 Union Street, Suite 200, New Orleans, LA 70112. Counsel for Bradford Row subsequently contacted the undersigned to advise that the homeowners association dues on both Heavens Drive properties were paid up to date and that Bradford Row would not file a third-party ancillary petition.

Mario Zelaya was personally served with a legal notice and a copy of the preliminary order of forfeiture, both in English and in Spanish, on August 7, 2018. A copy of the notice is attached hereto as Exhibit B. Susana Tirado-Zelaya was served with a legal notice and a copy of the preliminary order of forfeiture on August 18, 2018. A copy of the notice is attached hereto as Exhibit C. Each of the legal notices stated in part (*emphasis* added):

> Any person claiming a legal right, title, or interest in the property listed in the enclosed Preliminary Order of Forfeiture must petition the United States District Court for the Eastern District Louisiana for a hearing to adjudicate the validity of the alleged legal interest…. ***The petition must***:
>
> - ***be signed by the petitioner under penalty of perjury***;
> - state the nature and extent of the petitioner's claimed right, title, or interest in the property;
> - include the time and circumstances of the petitioner's acquisition of the right, title, or interest in the property; and
> - include any additional facts supporting the petitioner's claim and the relief sought.

6

In response to these notices, Mario Zelaya filed a document with the Court on August 31, 2018 (Rec. Doc. 35), and Susana Tirado-Zelaya on September 7, 2018 (Rec. Doc. 37), both seeking relief in regards to the Depre Street and Heavens Drive properties.  No other third-party petitions have been received by the government.

### III.     Law and Argument

21 U.S.C. § 853(n), "Third party interests," provides as follows, in pertinent part (*emphasis added*):

> (2) Any person, other than the defendant, asserting a legal interest in property which has been ordered forfeited to the United States pursuant to this section may… petition the court for a hearing to adjudicate the validity of his alleged interest in the property.
>
> (3) The petition ***shall be signed by the petitioner under penalty of perjury*** and shall set forth the nature and extent of the petitioner's right, title, or interest in the property, the time and circumstances of the petitioner's acquisition of the right, title, or interest in the property, any additional facts supporting the petitioner's claim, and the relief sought….
>
> (6) If, after the hearing, the court determines that the petitioner has established by a preponderance of the evidence that—
>
>> (A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant ***at the time of the commission of the acts which gave rise to the forfeiture of the property*** under this section; or
>>
>> (B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and ***was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture*** under this section;
>
> the court shall amend the order of forfeiture in accordance with its determination.

The requirement that the petition "shall be signed under penalty of perjury" does not demand or imply that the petitioner needs to appear before a notary or swear an oath in order to

7

complete the petition. The requirement may be satisfied simply by including the following language at the end of the petition: "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on (date). (Signature)." See 28 U.S.C. § 1746, "Unsworn declarations under penalty of perjury."

Federal Rule of Criminal Procedure 32.2(c), "Ancillary Proceeding; Entering a Final Order of Forfeiture," provides as follows, in pertinent part (*emphasis* added):

> (1) In General. If, as prescribed by statute, a third party files a petition asserting an interest in the property to be forfeited, the court must conduct an ancillary proceeding….
>
>> (A) In the ancillary proceeding, the court may, on motion, ***dismiss the petition for lack of standing, for failure to state a claim, or for any other lawful reason***. For purposes of the motion, the facts set forth in the petition are assumed to be true….
>
> (2) Entering a Final Order. When the ancillary proceeding ends, the court must enter a final order of forfeiture by amending the preliminary order as necessary to account for any third-party rights….

Two aspects of 21 U.S.C. § 853(n) and Fed. R. Crim P. 32.2(c) are particularly relevant in reviewing the third-party ancillary petitions filed by Mario Zelaya and Susana Tirado-Zelaya: that signature under penalty of perjury is mandatory; and that claims for relief are limited to cases where the petitioner acquired a property interest prior to the date of the criminal conduct forming the basis of the conviction, or acquired an interest through a bona fide transaction without knowledge of the criminal conduct.

**a. Neither Third-Party Petition Is Signed Under Penalty of Perjury**

In *United States v. Ginn*, Crim. No. 09–301, 799 F. Supp. 2d 645, 647 (E.D. La. June 9, 2010) (Feldman, J.), this Court explained the significance of the strict statutory requirement that a third-party ancillary petition be signed under penalty of perjury pursuant to 21 U.S.C. § 853(n):

8

> Courts have strictly construed the statutory requirements in order to discourage false or frivolous claims. *United States v. Edwards,* No. 06–50127–01, 2007 WL 2088608, at *2 (W.D.La. July 20, 2007) (dismissing a petition that was not signed under penalty of perjury and that failed to specify her legal interest in the subject property); *see United States v. Patillo,* No. 08–22, 2009 WL 5217005, at *1–2 (E.D.Tenn. Dec. 30, 2009) (dismissing a petition that was not signed under penalty of perjury and did not set forth the nature and extent of the petitioner's asserted interest in the property); *United States v. Loria,* No. 08–233–2, 2009 WL 3103771, at *1–2 (W.D.N.C. Sept. 21, 2009) (dismissing a petition that was filed three days late and not signed under penalty of perjury). Indeed, requiring a claimant to sign personally under penalty of perjury serves the government's legitimate interest in protecting forfeited assets. *See United States v. Owens,* No. 09–89, 2010 WL 583910, at *2 (S.D.Ind. Feb. 12, 2010) (quoting *United States v. Speed Joyeros, S.A.,* 410 F.Supp.2d 121, 124 (E.D.N.Y.2006)).

In *Ginn*, the government served written notices on potential third-party claimants Ms. Ginn and Ms. Cummings, advising them that a vehicle and a certain amount of cash were subject to forfeiture, and that they if they had any legal interest in the properties they could file third-party petitions. The notices stated that any petition "must be signed by the petitioner under penalty of perjury . . . and shall set forth the nature and the extent of your right, title, or interest in the property, the time and circumstances of your acquisition of the right, title, or interest in the property and any additional facts supporting your claim and the relief sought." *Id.* at 645. Both Ms. Ginn and Ms. Cummings filed third-party petitions with the Court. Ms. Ginn claimed to own the vehicle and to have acquired it though employment and family assistance; Ms. Cummings claimed to own the cash and to have acquired it with financial aid for education. *Id.* The Court noted that, "[c]uriously, neither petition was signed under penalty of perjury." *Id.* The government filed a motion to dismiss both petitions on grounds that neither petition was signed under penalty of perjury and that neither stated a claim for which relief could be granted. The Court dismissed both petitions, on both grounds:

> The notice served on the claimants clearly informed them that any petition must be signed under penalty of perjury. Further, both petitions fail to state sufficient facts regarding the nature of their claims, as required by the statute and general pleading

9

> requirements…. Neither petitioner states the time of acquisition or provides any facts that would be sufficient for a finding that their asserted interests are valid.

*Id*. at 647.

In *United States v. Lamid*, 663 F. App'x 319, 323 (5th Cir. 2016), the Fifth Circuit Court of Appeals quoted *Ginn* approvingly for demanding "strict compliance" with the requirement of signature under penalty of perjury, in light of the government's legitimate interest in protecting the forfeiture of criminal proceeds:

> Section 853(n)(3) requires that a person asserting a legal interest in forfeited property file a petition that is "signed by the petitioner under penalty of perjury." 21 U.S.C. § 853(n)(3).  Because of the substantial danger of false claims in forfeiture proceedings, federal courts require strict compliance with this requirement. *See*, *e.g.*, *United States v. Burge*, 829 F.Supp.2d 664, 667 (C.D. Ill. 2011) (dismissing petitioner's claim for failure to sign her petition); *United States v. Ginn*, 799 F.Supp.2d 645, 647 (E.D. La. 2010) (noting the desire to discourage false or frivolous claims and stating that "requiring a claimant to sign personally under penalty of perjury serves the government's legitimate interest in protecting forfeited assets").

In the instant case, just as in *Ginn*, the government served written notices on both Mario Zelaya and Susana Tirado-Zelaya.  Each notice clearly stated that any petition for a hearing to contest the forfeiture of the listed real estate "must…be signed by the petitioner under penalty of perjury."  See attached Exhibits B and C.  Neither of the petitions filed by Mario Zelaya and Susana Tirado-Zelaya is signed under penalty of perjury.  Under *Ginn* and Fed. R. Crim. P. 32.2(c)(1)(A), both petitions should be dismissed.

The government respectfully submits that it is less curious in the instant matter than in *Ginn* why neither third-party petitioner signed the petition under penalty of perjury.  As noted above, Carlos Zelaya was indicted for two counts of impeding an official proceeding under 21 U.S.C. § 1512(c)(2) for signing a false statement under penalty of perjury, declaring that the $1,080,000.00 fake loan contract was genuine and was the true source of funds for the purchase of

10

some of the St. Tammany real estate. Carlos Zelaya has since admitted that the statement was false, and that both the fake loan contract and the fake purchase agreement were intended to disguise bribe payments to Mario Zelaya that were used by Carlos Zelaya to buy all the St. Tammany real estate. Now, Mario Zelaya in his third-party petition has asserted that the fake purchase agreement was genuine; but he has not ventured to go as far as his brother and co-conspirator Carlos Zelaya did, nor as far as 21 U.S.C. § 853(n) requires, by making this assertion under penalty of perjury.

Moreover, as discussed further below, Mario Zelaya states that he made this same assertion as part of his defense in his criminal trial in Honduras, after which he was found guilty of bribery. The government submits that what the Fifth Circuit in *Lamid* recognized as a "substantial danger of false claims in forfeiture proceedings" generally should be a very specific concern here, where the claimant is an unindicted co-conspirator, rather than, as in *Ginn*, someone unrelated to the crime; where claimant's co-conspirator, Carlos Zelaya, already lied under penalty of perjury and was indicted for it; where the claimant seeks to contradict the facts of the defendant's criminal plea, acknowledged by both the government and the defendant; and where the claimant's assertions were previously reviewed and rejected by another tribunal.

 **b. The Petition of Mario Zelaya Fails to State a Claim for Relief**

As an unindicted co-conspirator convicted in a foreign country for his role in the facts underlying the above-captioned criminal case, Mario Zelaya is not in every sense a third party in this matter. Indeed his third-party ancillary petition reads more like a first-party defense against some of the central facts established at the rearraignment of the defendant in this case, Carlos Zelaya. Whereas Carlos Zelaya has acknowledged as part of his guilty plea, under oath, that the fake purchase agreement was a false document intended to disguise the fact that the money he used

11

to buy the Depre Street and Heavens Drive properties were bribe payments from Honduras Businessmen 1 and Honduras Businessmen 2 to Mario and Carlos Zelaya, the position taken by Mario Zelaya in his third-party petition is that the purchase agreement was genuine and the evidence of bribery is fake. This is not one of the limited types of claim for relief recognized in ancillary forfeiture proceedings under 21 U.S.C. § 853(n)(6). The Fifth Circuit has recognized, in *United States v. Holy Land Found. for Relief & Dev.*, 722 F.3d 677, 690 (5th Cir. 2013), that an ancillary proceeding "does not involve relitigation of the forfeitability of the property," and is limited to the two types of claims described in § 853(n)(6):

> A third party can prevail in the ancillary proceeding in one of two ways: (1) it can establish priority over the interest of the United States by showing that it had an interest in the property superior to the defendant's interest at the time the defendant committed the crime, 21 U.S.C. § 853(n)(6)(A); or (2) it can establish that it was a bona fide purchaser for value of the property, and, at the time of purchase, had no reason to believe that the property was subject to forfeiture, *id.* at § 853(n)(6)(B). If a third party is unable to satisfy either § 853(n)(6)(A) or (B), it cannot prevail in the ancillary proceeding. *See United States v. Huntington Nat'l Bank,* 574 F.3d 329, 334 (6th Cir. 2009) ("[T]he questions potentially at issue in a § 853(n) proceeding are limited ... [as] § 853(n)(6) offers just two grounds for relief.").… In the absence of this showing, the United States acquires clear title to the property. *Id.* at § 853(n)(7).

*Id.* at 684-85.

Mario Zelaya's position is neither that he owned the forfeited properties prior to the timeframe of the conspiracy to which Carlos Zelaya has pleaded guilty, nor that he obtained them reasonably without cause to believe that the properties were the proceeds of the crime. His position is rather that the Depre Street and Heavens Drive properties are not subject to forfeiture at all, because there was no crime: no bribery, no money laundering, no conspiracy; only an advance payment from the sale of Honduran real estate as recited in the fake purchase agreement. As noted above, Carlos Zelaya has acknowledged under oath as part of his guilty plea that the "Contract to Promise to Buy and Sell" real estate in Honduras was a fake contract created after the fact by the

sister and brother-in-law of one of the Honduran bribe payers in order to cover up the bribe payments used to purchase the Depre Street and Heavens Drive properties. In his third-party petition, Mario Zelaya's central contradictory assertion is that the purchase agreement was genuine and the funds used purchase the three properties came from the brother-in-law as part of an advance payment for the Honduran real estate. The brother-in-law was Marco Jaen, as named by Mario Zelaya in his third-party petition. In fact, as acknowledged by Carlos Zelaya in his factual basis before this Court, Marco Jaen was the same person with whom Carlos Zelaya conspired to create and execute the false loan contract offered to cover up the bribes used to purchase the other six properties in Louisiana.[2]

Mario Zelaya misleadingly states in his petition that the Honduran purchase agreement was "accepted by…the Supreme Court of Justice in Honduras, as proof of my defense in the trial carried out in Tegucigalpa, Honduras," and that he has "not yet received a written judgment" of conviction. He glosses over the fact that his conviction for bribery was announced orally in open court at the end of the his trial in Honduras, and that he was convicted in spite of the fact that the fake contracts with Marco Jaen were admitted into evidence.[3] By suggesting that the Honduran tribunal "accepted" the purchase agreement "as proof of [his] defense," Mario Zelaya seeks to spin the fact that the fake purchase agreement was accepted into evidence as a mark of its credibility; yet in light of his ultimate conviction following the trial, the government respectfully suggests a

---

[2] Pursuant to a mutual legal assistance request, the government interviewed Marco Jaen and his wife (the sister of Honduran Businessman 1, one of the bribe payers) in Panama in August 2016. Both witnesses acknowledged that there was no genuine real estate transaction behind the fake purchase agreement for the Valle de Ángeles property in Honduras, and that it was created at the request of Mario Zelaya to explain other payments from Honduran Businessman 1. Honduran Businessman 1 has also stated under oath in a deposition alluded to in Mario Zelaya's petition that the contract was fake and was created to cover up bribe payments that he made for the benefit of Mario Zelaya.

[3] Although the conviction was announced orally, the written judgment of conviction, which in Honduras incorporates all trial testimony and evidence, has not yet been handed down. This information was provided to undersigned counsel by the Public Ministry of Honduras.

more plausible interpretation is that the tribunal had the opportunity to consider the contract and Mario Zelaya's story about a purported real estate sale to Marco Jaen, and that the tribunal rejected both as false.

Additionally, Mario Zelaya's petition fails to state a claim for relief under 21 U.S.C. § 853(n)(2) because, for two out of the three sources of funds he claims for the Depre Street and Heavens Drive properties, he remains vague about "the time and circumstances of the petitioner's acquisition of the right, title, or interest in the property, [and] any additional facts supporting the petitioner's claim." Although Mario Zelaya clearly invokes the fake purchase agreement as purported evidence of a source of funds for the Depre Street and Heavens Drive properties, he does not state how much of the purchase funds came from this source and how much came from the other sources of funds he cited:

> For the LEGAL acquisition of said properties I used own funds that I had in the United States *and* funds from transfers sent from Honduras by Mr. Marco Jaen, Administrator of the Novaterra Real Estate and Investment Company, *and* proceeds from the advance payment for the sale of a land of 2 blocks in the Municipality of Valle de Angeles, Department of Francisco Morazan, Honduras, Central America. Mr. Jaen transferred to the Whitney Bank account of North Lake Title the amount of $370,571 in four transfers…

(Rec. Doc. 35, pp. 2-3) (*emphasis* added). Nowhere does the petition state how much of Mario Zelaya's "own funds that [he] had in the United States" were involved in the purchase, nor how much came from Marco Jaen aside from the purported advance payment for the Valle de Ángeles property memorialized in the fake purchase agreement. Indeed, the assertion that the Depre Street and Heavens Drive properties were purchased at the hands of Carlos Zelaya using unspecified funds sent by Marco Jaen and other unspecified funds in the United States belonging to Mario Zelaya, is wholly consistent with the government's evidence—admitted to by Mario's brother and conspirator, Carlos—that the properties were purchased with corrupt payments sent through Marco

14

Jaen and others. Because the petition fails to assert the amounts and circumstances of these other sources of funds, it fails to state a claim of relief under 21 U.S.C. § 853(n)(2).

### c. The Petition of Susana Tirado-Zelaya Fails to State a Claim for Relief

The petition filed by Susana Tirado-Zelaya does not meet the threshold requirement under 21 U.S.C. § 853(n)(2) of "asserting a legal interest in property which has been ordered forfeited." The government has to date allowed Ms. Tirado-Zelaya and her children to continue to live rent-free in one of the Depre Street and Heavens Drive properties while her husband, Mario Zelaya, was on trial in Honduras on the corruption charges laid out above. In her petition, she highlights the fact that she lacks a U.S. visa and so cannot work to support her children and to provide alternative housing, and she asks for clemency from the Court. But nowhere in her petition does Ms. Tirado-Zelaya assert a legal interest in the properties. For this reason, her petition fails to state a claim of relief under 21 U.S.C. § 853(n).

### IV.  Conclusion

Because neither of the third-party petitions filed by Mario Zelaya and Susana Tirado-Zelaya was signed under penalty of perjury, the Court should dismiss both petitions under the holding of *Ginn* and the mandatory provisions of 21 U.S.C. § 853(n)(3).

Moreover, neither petition asserts sufficient information about the circumstances by which the petitioner came to acquire an interest in the properties as required under § 853(n)(3), other than in Mario's petition in which he seeks to contradict the facts acknowledged under oath by the criminal defendant and conspirator, Carlos Zelaya. Neither petition otherwise articulates a claim for relief recognized under § 853(n)(6). For these reasons, the Court should grant the government's motion brought under Fed. R. Crim. P. 32.2(c)(1)(A) and dismiss both third-party ancillary petitions.

The government submits that the liens and affidavits of U.S. Assets LLC establish that U.S. Assets LLC should be reimbursed from the sale of the forfeited properties for its tax sale purchases in accordance with law as stated above.  Any other outstanding amounts due to St. Tammany Parish at the time of the sale of the forfeited properties will also be paid from the sale of the properties in accordance with law.

As no other third-party petitions were filed for the properties described in the preliminary order of forfeiture, should the Court order that the petitions of Mario and Susana Tirado-Zelaya be dismissed, the government respectfully requests that the Court issue a final order of forfeiture as to all nine real properties described in the preliminary order.

Respectfully submitted,

DEBORAH L. CONNOR, Chief
Money Laundering and Asset Recovery Section
U.S. Department of Justice

*/s/ Michael B. Redmann*
MICHAEL B. REDMANN (LA 31929)
MARYBETH GRUNSTRA
Trial Attorneys
1400 New York Avenue, NW
Washington, D.C. 20530
Telephone: (202) 839-7103
Email: michael.redmann2@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing pleading has been served in accordance with the Court's ECF Rules this 29th day of November, 2018.  A copy has also been sent by U.S. mail to the address provided by both Mario and Susana Tirado-Zelaya in their filings: 717 Heavens Drive, Apt. 8, Mandeville, Louisiana 70471.

*/s/ Michael B. Redmann*
MICHAEL B. REDMANN (LA 31929)
Trial Attorney